1 | ALEXANDER ROBERTSON, IV (State Bar No. 127042)
   arobertson@arobertsonlaw.com
2 | MARK J. UYENO (State Bar No. 189063)
   muyeno@arobertsonlaw.com
3 | ROBERTSON & ASSOCIATES, LLP
   32121 Lindero Canyon Road, Suite 200
4 | Westlake Village, California 91361
   Telephone: (818) 851-3850 • Facsimile: (818) 851-3851
5 |
   PETER J. BEZEK (State Bar No. 102310)
6 | pbezek@foleybezek.com
   ROBERT A. CURTIS (State Bar No. 203870)
7 | rcurtis@foleybezek.com
   FOLEY BEZEK BEHLE & CURTIS, LLP
8 | 15 West Carrillo Street
   Santa Barbara, California 93101
9 | Telephone: (805) 962-9495 • Facsimile: (805) 962-0722

10 | JOSEPH LIEBMAN (State Bar No. 110836)
    jliebmanlaw@gmail.com
11 | LAW OFFICES OF JOSEPH LIEBMAN
    4250 Mariposa Drive
12 | Santa Barbara, California 93110
    Telephone: (805) 563-2421
13 |
14 | GEOFF J. SPRETER (State Bar No. 257707)
    geoff@spreterlaw.com
15 | BEN PETIPRIN (State Bar No. 256797)
    ben@spreterlaw.com
16 | SPRETER & PETIPRIN, APC
    601 3rd Street
17 | Coronado, California 92118
    Telephone: (619) 865-7986

18 | Attorneys for PLAINTIFFS

19 |         SUPERIOR COURT OF THE STATE OF CALIFORNIA

20 |             COUNTY OF MONO, SOUTH COUNTY

21 | DANIEL A. TACKITT, individually and d/b/a       Case No. CV200098
    EASTSIDE HAY; JOHANNA L. TACKITT,
22 | an individual; ZACHARY D. TACKITT, a            **COMPLAINT FOR:**
    minor, by and through his Guardian ad Litem,
23 | DANIEL A. TACKITT; GRACE A.                     **1. NEGLIGENCE**
    PINOCHI, a minor, by and through her            **2. INVERSE CONDEMNATION**
24 | Guardian ad Litem, JOHANNA L. TACKITT;          **3. PUBLIC NUISANCE**
    VICTORIA FORD, an individual; CHARLES           **4. PRIVATE NUISANCE**
25 | PADILLA, an individual; CASSIE                   **5. PREMISES LIABILITY**
    BARAJAS, an individual; RUSS BARAJAS,           **6. TRESPASS**
26 | an individual; HARLOW BARAJAS, a minor,         **7. VIOLATIONS OF PUBLIC UTILITIES**
    by and through her Guardian ad Litem,              **CODE § 2106**
27 | CASSIE BARAJAS; AIDEN BARAJAS, a                **8. VIOLATION OF HEALTH & SAFETY**
    minor, by and through his Guardian ad Litem,       **CODE § 13007**
28 | CASSIE BARAJAS; BRIAN K. JOHNSON,

ROBERTSON
& ASSOCIATES, LLP

00031437.1

COMPLAINT

FILED

DEC 2 3 2020

SUPERIOR COURT OF CALIFORNIA
COUNTY OF MONO
BY:

**JURY TRIAL DEMANDED**

an individual; LORETTA BUCHHOLTZ, an individual; RANDY BUCHHOLTZ, an individual; DEANNA HOLMES, an individual; ROGER DONAHUE, an individual; KAREN DONAHUE, an individual; STORM DONAHUE, an individual; WILLIAM "BILLIE" FARMER, an individual; JEANETTE "JANET" KITE, an individual; BARRY W. WHITE, an individual; PAUL KAMANSKI, an individual; CAREN CAMPBELL-KAMANSKI, an individual; TENNESSEE SC KAMANSKI, an individual; AARON DENNIS, an individual; CHUCK KAMANSKI, an individual; KIRK JOHNSON, an individual; SHARON McDONALD, an individual; LEONARD McDONALD, an individual; KIMBERLY MEDEIROS, an individual; JOHN D. McKNIGHT, an individual; JANIS L. McKNIGHT, an individual, ROBERTA MENZEMER, an individual; E. A. TRENTHAM, an individual; JOHN WILEY, an individual; SIGMUND DUVERNEY, an individual,

        Plaintiffs,

    vs.

LIBERTY UTILITIES (CALPECO ELECTRIC), LLC; ALGONQUIN POWER & UTILITIES CORP; and DOES 1 through 50, inclusive,

        Defendants.

Plaintiffs bring this action for damages against Defendants LIBERTY UTILITIES (CALPECO ELECTRIC), LLC ("LIBERTY"), and its parent corporation, ALGONQUIN POWER & UTILITIES CORP ("ALGONQUIN") (collectively "LIBERTY Defendants") and DOES 1 through 50 as follows:

## INTRODUCTION

1.    This case arises from the deadly Mountain View Fire, which has burned in excess of 20,000 acres, destroyed 90 structures, and killed one person. The Mountain View Fire has been a traumatic event for its victims, who through no fault of their own, went from homeowners to homeless in a matter of hours.

2.    According to eye witnesses, the Mountain View Fire began on November 17, 2020 near the Mountain View Barbeque restaurant, located at 106834 US-395, Coleville, California. Plaintiffs are informed and believe, and thereon allege, that an energized distribution conductor owned and operated by LIBERTY broke and fell to the ground during strong winds into a receptive fuel bed, which ignited the fire. The fire spread quickly, pushed by strong winds along U.S. 395; before rain and snow extinguished the fire, it scorched over 32 square miles. Almost all residents of Walker and Coleville were displaced by the fire.



/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10



11

12

13

14

15

16

17

18

19

20



21

22

23

24

25

26

27

28   / / /

3.      Plaintiffs are further informed and believe, and thereon allege that Mono County Sheriff's Department posted on its Twitter account on November 17, 2020 at approximately 9:53 a.m. that a Public Safety Power Shutoff was possible due to forecasted high winds.

4.      Plaintiffs are further informed and believe, and thereon allege that on November 17, 2020 prior to the ignition of the fire, an electrical event occurred on LIBERTY's circuit which provides electricity to Coleville and Walker, which resulted in the loss of electricity to customers of Coleville and Walker hours before the fire. At approximately 11:48 a.m. on November 17, 2020, LIBERTY notified Plaintiffs via a text alert that it has re-energized the circuit and that power had been restored to "Coleville – Topaz". Approximately 16 minutes after LIBERTY re-energized its circuit during high winds, the Mountain View Fire ignited.

5.      As set forth in more detail below, the Mountain View Fire was caused by the LIBERTY Defendants' negligence in (a) failing to maintain its overhead electrical facilities in a safe manner; and/or (b) failing to perform vegetation management in accordance with applicable regulations; and/or (c) failing to de-energize its electrical conductors to prevent a catastrophic wildfire during the anticipated and predicted high wind weather conditions that preceded the Mountain View Fire.

6.      The LIBERTY Defendants had a duty to properly construct, maintain, inspect and operate its electrical infrastructure. The LIBERTY Defendants violated these duties by knowingly operating aging and improperly maintained infrastructure.

7.      Had the LIBERTY Defendants acted responsibly, the Mountain View Fire could have been prevented.

8.      Plaintiffs have suffered property damage and disruption to their homes and properties, loss of income, loss of business, life and livelihood, and seek fair compensation in this case.

9.      Pursuant to GO 167, section 10.4, LIBERTY had a duty to file a Safety-Related Incident Report with the California Public Utilities Commission ("CPUC") within 24 hours of the ignition of the Mountain View Fire, because such incident resulted in the death, injury or illness to a person requiring overnight hospitalization, and/or damage to property of another exceeding

1  $50,000, and/or because the incident resulted in significant negative media coverage. LIBERTY

2  violated GO 167, section 10.4 by failing to file a Safety-Related Incident Report with the CPUC.

3    10.    Plaintiffs bring claims on behalf of themselves for damages for, inter alia, damage

4  to and loss of use of real and personal property; loss of income; loss of business; consequential

5  and incidental damages; emotional distress; and other harm caused by defendants' wrongful

6  conduct.

## JURISDICTION AND VENUE

8    11.    This Court has subject matter jurisdiction over this matter pursuant to California

9  Code of Civil Procedure § 395(a) because, at all times relevant, Defendants have conducted

10  significant business in the County of Mono, State of California, so as to render the exercise of

11  jurisdiction over Defendants by California courts consistent with the traditional notions of fair

12  play and substantial justice. The amount in controversy exceeds the jurisdictional minimum of this

13  Court.

14    12.    Venue is proper in this County pursuant to California Code of Civil Procedure §

15  395.5 because, at all times relevant herein, the Defendants wrongful conduct which caused the

16  Mountain View Fire occurred in Mono County and damaged the Plaintiffs' properties, businesses

17  and livelihoods located in Mono County.

## THE PLAINTIFFS

19    13.    Plaintiffs DANIEL A. TACKITT and JOHANNA L. TACKITT are the owners of

20  their family home located at 2215 Eastside Lane, Coleville, California, and operate EASTSIDE

21  HAY, on that property.  Plaintiffs ZACHARY D. TACKITT and GRACE A. PINOCHI are the

22  minor children of Plaintiffs DANIEL A. TACKITT and JOHANNA L. TACKITT. The Mountain

23  View Fire destroyed Plaintiffs' home and personal property, including landscaping and trees, and

24  caused each of them to suffer emotional distress. The Plaintiffs have also suffered loss of business,

25  business interruption, and loss of profits.  The photos below depict the "before" and "after"

26  conditions of the TACKITT's property.

27  / / /

28  / / /

ROBERTSON
& ASSOCIATES, LLP

00031437.1

6

COMPLAINT

 

14.     Plaintiffs DANIEL A. TACKITT and JOHANNA L. TACKITT are also the owners of 2233 and 2249 Eastside Lane, Coleville, California, which homes were rented to tenants at the time of the Fire.  In addition to their other damages, Plaintiffs sustained lost rental income as a direct result of the Mountain View Fire.

15.     Due to the loss of their home in the Mountain View Fire Plaintiffs DANIEL A. TACKITT, JOHANNA L. TACKITT, ZACHARY D. TACKITT and GRACE A. PINOCHI were evacuated and forced to take up temporary residence in local hotels/motels with neighbors whose homes were also damaged and/or destroyed in the Fire, thereby exposing them to the Covid-19 coronavirus resulting in each of them becoming ill with the Covid-19 corona virus. DANIEL A. TACKITT became so ill he was transported to the hospital via ambulance for treatment.

16.     Plaintiffs VICTORIA FORD and CHARLES PADILLA are the owners of their family home located at 465 Lone Company Road, Coleville, California. The Mountain View Fire destroyed Plaintiffs' home and personal property, including landscaping and trees, and caused each of them to suffer emotional distress.

17.     Plaintiffs CASSIE BARAJAS and RUSS BARAJAS are the owners of their family home located at 700 Eastside Road, Coleville, California.  Plaintiffs HARLOW BARAJAS and AIDEN BARAJAS are the minor children of Plaintiffs CASSIE BARAJAS and RUSS BARAJAS. The Mountain View Fire destroyed Plaintiffs' real and personal property, including landscaping and trees, and caused each of them to suffer emotional distress. The photos below depict the "before" and "after" conditions of the BARAJAS property.

 

18.     Plaintiff BRIAN K. JOHNSON is the owner of his family home located at 448 Eastside Road, Coleville, California.  The Mountain View Fire destroyed Plaintiff's home and personal property, including landscaping and trees, and caused him to suffer emotional distress.

19.     Plaintiffs LORETTA BUCHHOLTZ and RANDY BUCHHOLTZ are the owners of their family home located at 257 Pinon Place, Coleville, California.  The Mountain View Fire destroyed Plaintiffs' real and personal property, including landscaping and trees, and caused each of them to suffer emotional distress. The photos below depict the "before" and "after" conditions of the BUCHHOLTZ property.

 

20.     Plaintiff DEANNA HOLMES is the mother of Plaintiff LORETTA BUCHHOLTZ and resided with her daughter at her family home located at 257 Pinon Place, Coleville, California. The Mountain View Fire damaged Plaintiff's personal property, and caused her to suffer emotional distress.

21.     Plaintiffs ROGER DONAHUE and KAREN DONAHUE are the owners of their family home located at 747 N. River Lane, Coleville, California.  Plaintiff STORM DONAHUE is

1  the daughter of Plaintiffs ROGER DONAHUE and KAREN DONAHUE and resided with her

2  parents at the family home.  The Mountain View Fire damaged Plaintiffs' real and personal

3  property, including landscaping and trees, and caused each of them to suffer emotional distress.  In

4  addition, ROGER DONAHUE fought the fire to save his home for over 27 hours and experienced

5  personal injury in the form of, among other things, smoke inhalation.  The photo below depicts

6  ROGER DONAHUE immediately after fighting the fire.



15  22.    Plaintiff WILLIAM "BILLIE" FARMER is the terminally ill cousin of Plaintiff

16  ROGER DONAHUE and resided with his cousin at his family home located at 747 N. River Lane,

17  Coleville, California.  The Mountain View Fire damaged Plaintiff's personal property, and caused

18  him to suffer emotional distress.

19  23.    Plaintiff JEANETTE "JANET" KITE was a tenant at 26 HFU Circle No. 8

20  Coleville, California. The Mountain View Fire destroyed Plaintiff's home and personal property,

21  and caused her to suffer emotional distress.

22  24.    Plaintiff BARRY W. WHITE is the owner of his family home located at 201 N.

23  River Lane, Coleville, California.  The Mountain View Fire destroyed Plaintiff's real and personal

24  property, including landscaping and trees, and caused him to suffer emotional distress.

25  25.    Plaintiffs PAUL KAMANSKI and CAREN CAMPBELL-KAMANSKI are the

26  owners of their family home located at 726 Burcham Flat Road, Coleville, California.  The

27  Mountain View Fire destroyed Plaintiffs' real and personal property, including landscaping and

28  trees, and caused each of them to suffer emotional distress.

26.    Plaintiffs TENNESSEE SC KAMANSKI, the adult daughter of PAUL KAMANSKI and CAREN CAMPBELL-KAMANSKI, her boyfriend, AARON DENNIS, CHUCK KAMANSKI, the brother of Plaintiff PAUL KAMANSKI, and family friend KIRK JOHNSON, were all at 201 N. River Lane, Coleville, California, when the Fire began and destroyed the family home. Plaintiffs, and each of them, sustained emotional distress as a result of witnessing the Fire and fearing for their lives and safety and for the safety and wellbeing of others at the home.

27.    Plaintiffs SHARON McDONALD and LEONARD McDONALD are the owners of their family home located at 202 Mule Deer Road, Coleville, California.  Plaintiffs are also the owners of the vacant 5 acre parcel, APN 002-410-004-000. The Mountain View Fire burned close Plaintiffs' home and Plaintiffs feared for their lives and suffered emotional distress. The Mountain View Fire burned all plants, vegetation and trees on the 5 acre parcel.

28.    Plaintiff KIMBERLY MEDEIROS was a tenant at 777 Eastside Road, Coleville, California.  The Mountain View Fire destroyed Plaintiff's home and personal property, and caused her to suffer emotional distress.

29.    Plaintiffs JOHN D. McKNIGHT and JANIS L. McKNIGHT are the owners of their family home located at 503 N. River Lane, Coleville, California.  The Mountain View Fire destroyed Plaintiffs' real and personal property, including two homes located on Plaintiffs' property, landscaping and trees, and caused each of them to suffer emotional distress. The photos below depict the "before" and "after" conditions of the McKNIGHT property.



30.     Plaintiff ROBERTA MENZEMER is the owner of her home located at 259 Camp Antelope Road, Coleville, California.  The Mountain View Fire destroyed Plaintiff's real and personal property, including her garage, water and power infrastructure located on Plaintiff's property, landscaping and trees, and caused her to suffer emotional distress.

31.     Plaintiff E. A. TRENTHAM is the owner of 5.5 acres of undeveloped land on located at 638 Eastside Road, Coleville, California.  The Mountain View Fire destroyed Plaintiff's real and personal property, including landscaping and trees, as well as his storage sheds and their contents which were located on Plaintiff's property, and caused him to suffer emotional distress.

32.     Plaintiff JOHN WILEY is the owner of the real property located at 95 Eastside Lane, Coleville, California, which he rented.  The Mountain View Fire destroyed Plaintiff's real and personal property, including landscaping and trees, causing him to lose income, and caused him to suffer emotional distress.

33.     Plaintiff SIGMUND DUVERNAY is the owner of 13.3 acres he resided on located at 525 Eastside Road, Coleville, California.  The Mountain View Fire destroyed Plaintiff's real and personal property, including landscaping and trees, as well as a large shipping container and its contents, which was located on Plaintiff's property, and caused him to suffer emotional distress.

## THE DEFENDANTS

34.     At all times herein mentioned defendant LIBERTY UTILITIES, (CALPECO ELECTRIC), LLC is a Limited Liability Company authorized to do business, and doing business, in the State of California, with its principal place of business located at 701 National Ave, Tahoe Vista,, California. Defendant LIBERTY is a wholly owned subsidiary of defendant ALGONQUIN.

35.     At all times herein mentioned defendant ALGONQUIN POWER & UTILITIES CORP is a corporation authorized to do business, and doing business, in the State of California, by and through its wholly owned subsidiary LIBERTY.

36.     The LIBERTY defendants provide customers with public utility services, and services relating to the generation of energy, generation of electricity, transmission of electricity and natural gas, and the distribution of energy.

37.    LIBERTY is both an "Electrical Corporation" and a "Public Utility" pursuant to, respectively, Sections 218(a) and 216(a) of the California Public Utilities Code. LIBERTY is in the business of providing electricity to the residents and businesses in California, and more particularly, to Plaintiffs' residences, businesses, and properties through a network of electrical transmission and distribution lines and power generation plants.

38.    At all times mentioned herein, LIBERTY was the supplier of electricity to members of the public in Mono County, and elsewhere in California. As part of supplying electricity to members of the public, LIBERTY installed, constructed, built, maintained, and operated overhead power lines, together with supporting utility poles and transformers, for the purpose of conducting electricity for delivery to members of the general public. Furthermore, on information and belief, LIBERTY is responsible for maintaining vegetation near, around, and in proximity to their electrical equipment in compliance with State and Federal regulations, specifically including, but not limited to, Public Resource Code § 4292, Public Resource Code § 4293, CPUC General Order 95, and CPUC General Order 165.

39.    LIBERTY is an investor- owned utility, which enjoys a state-protected monopoly or quasi-monopoly, derived from its exclusive franchise provided by the State of California and is more akin to a governmental entity than a purely private entity, and runs its utility affairs like a governmental entity. LIBERTY's monopoly is guaranteed and safeguarded by the California Public Utilities Commission, which possesses the power to refuse to issue certificates of public convenience and necessity to permit potential competition to enter the market. The policy justifications underlying inverse condemnation liability are that individual property owners should not have to contribute disproportionately to the risks from public improvements made to benefit the community as a whole. Under the rules and regulations set forth by the California Public Utilities Commission, amounts that LIBERTY must pay in inverse condemnation can be included in their rates and spread among the entire group of rate payers so long as they are otherwise acting as a reasonable and prudent manager of their electric distribution systems.

40.    Plaintiffs allege that LIBERTY and ALGONQUIN are jointly and severally liable for each other's wrongful acts and/or omissions as hereafter alleged, in that:

a.    They operate as a single business enterprise operating out of the same location at 933 Eloise Ave., South Lake Tahoe, California, for the purpose of effectuating and carrying out LIBERTY's business and operations and/or for the benefit of ALGONQUIN;

b.    They do not operate as completely separate entities, but rather, integrate their resources to achieve a common business purpose;

c.    LIBERTY is so organized and controlled, and its decisions, affairs and business so conducted as to make it a mere instrumentality, agent, conduit or adjunct of ALGONQUIN;

d.    LIBERTY's income results from function integration, centralization of management, and economies of scale with ALGONQUIN;

e.    Their officers and management are intertwined and do not act completely independent of one another;

f.    Their officers and managers act in the interest of LIBERTY as a single enterprise;

g.    ALGONQUIN has control and authority to choose and appoint LIBERTY's board members as well as its other top officers and managers;

h.    Despite the fact that they are both Electric Companies and Public Utilities, LIBERTY and ALGONQUIN do not compete with one another, but have been structured and organized and their business effectuated so as to create a synergistic, integrated, single enterprise where various components operate in concert with one another;

i.    ALGONQUIN maintains unified administrative control over LIBERTY;

j.    LIBERTY and ALGONQUIN are insured by the same carriers and provide uniform or similar pension, health, life, and disability insurance plans for employees;

k.    LIBERTY and ALGONQUIN have unified 401(k) Plans, pension and investment plans, bonus programs, vacation policies, and paid time off from work schedules and policies;

/ / /

/ / /

1    l.    LIBERTY and ALGONQUIN invest funds from their programs and plans

2  by a consolidated and/or coordinated Benefits Committee controlled by LIBERTY and

3  administered by common trustees and administrators;

4    m.    LIBERTY and ALGONQUIN have unified personnel policies and practices

5  and/or a consolidated personnel organization or structure;

6    n.    LIBERTY and ALGONQUIN have unified accounting policies and

7  practices dictated by ALGONQUIN and/or common or integrated accounting organizations or

8  personnel;

9    o.    LIBERTY and ALGONQUIN are represented by common legal counsel;

10    p.    ALGONQUIN's officers, directors, and other management make policies

11  and decisions to be effectuated by LIBERTY and/or otherwise play roles in providing directions

12  and making decisions for LIBERTY;

13    q.    ALGONQUIN's officers, directors, and other management direct certain

14  financial decisions for LIBERTY, including the amount and nature of capital outlays;

15    r.    ALGONQUIN's written guidelines, policies, and procedures control

16  LIBERTY's employees, policies and practices;

17    s.    ALGONQUIN files consolidated earnings statements factoring in all

18  revenue and losses from LIBERTY, as well as consolidated tax returns, including those seeking

19  tax relief, and/or without limitation.

20    t.    ALGONQUIN generally directs and controls LIBERTY's relationship with,

21  requests to, and responses to inquiries from the CPUC and uses such direction and control for the

22  benefits of ALGONQUIN.

23    41.    Plaintiffs are informed and believe that the LIBERTY and ALGONQUIN and each

24  of them, were the agents and/or employees of each of the other and in acting and/or failing to act

25  as alleged herein, LIBERTY and ALGONQUIN, and each of them, were acting in the course and

26  scope of said agency and/or employment relationship.

27  / / /

28  / / /

## DOE DEFENDANTS

42.     The true names of DOES 1 through 50, whether individual, corporate, associate, or otherwise, are unknown to Plaintiffs who, under California Code of Civil Procedure § 474, sues these Defendants under fictitious names.

43.     Each of the fictitiously named Defendants is responsible in some manner for the conduct alleged herein, including, without limitation, by way of aiding, abetting, furnishing the means for, and/or acting in capacities that create agency, *respondeat superior*, and/or predecessor or successor-in-interest relationships with the other Defendants.

44.     The Doe Defendants are private individuals, associations, partnerships, corporations, or other entities that actively assisted and participated in the negligent and wrongful conduct alleged herein in ways that are currently unknown to Plaintiffs. Some or all of the DOE Defendants may be residents of the State of California.  Plaintiffs may amend or seek to amend this Complaint to allege the true names, capacities, and responsibility of these Doe Defendants once they are ascertained, and to add additional facts and/or legal theories.  Plaintiffs make all allegations contained in this Complaint against all Defendants, including DOES 1 through 50.

## FACTUAL ALLEGATIONS

### The Damage Caused By The Mountain View Fire

45.     The Mountain View Fire began on November 17, 2020 near the Mountain View Barbeque restaurant in Walker, California. The fire spread quickly, pushed by strong winds along U.S. 395; before rain and snow extinguished the fire, it scorched over 32 square miles. Almost all residents of Walker and Coleville were displaced by the fire.

46.     The Mountain View Fire burned in excess of 20,000 acres, destroyed 90 structures, and killed one person.  The Mountain View Fire has been a traumatic event for its victims, who through no fault of their own, went from homeowners to homeless in a matter of hours.

47.     The full extent of the damage caused by the Mountain View Fire has not yet been quantified.

/ / /

/ / /

1  48.    Because the fire spread so rapidly, individuals often could not protect their

2  properties and structures, or even remove personal possessions, irreplaceable heirlooms, and

3  valuable inventories of products, materials or records.

4  49.    The fire damage and destruction also has negatively impacted the value of the

5  Plaintiffs' real property, and will continue to affect its resale value and development for an

6  indefinite period of time in the future.

7  50.    In addition to damage and destruction of real and personal property, the Mountain

8  View Fire caused widespread economic losses to individuals and businesses throughout Mono

9  County, and will continue to do so into the future.

10  51.    Individuals who were displaced have incurred and will continue to incur costs

11  related to temporary lodging while being displaced.

12  52.    Businesses that suffered property damage have incurred and will continue to incur

13  economic losses due to their inability to operate their businesses, loss of access to their business

14  locations, and inability of employees to reach their businesses.  These conditions are ongoing and

15  will continue for an unknown duration of time.

16  ### Liberty Had A Non-Delegable, Non-Transferable Duty

17  ### To Safely Maintain Its Electrical Infrastructure

18  53.    At all times, LIBERTY had a non-delegable, non-transferable duty to properly

19  construct, inspect, maintain, repair, manage and/or operate its electrical conductors, utility poles

20  and appurtenant equipment and to prevent its overhead electrical  equipment from igniting a

21  wildfire.

22  54.    In the construction, inspection, repair, maintenance, ownership, and/or operation of

23  its power lines, utility poles and other electrical equipment, LIBERTY had an obligation to

24  comply with a number of statutes, regulations, CPUC General Orders and standards, as detailed

25  below.

26  55.    LIBERTY is required to comply with a number of design standards for its electrical

27  equipment, as stated in CPUC General Order 95. In high risk fire areas, LIBERTY must also

28  ensure that its power lines and utility poles can withstand winds of up to 92 miles per hour.

ROBERTSON
& ASSOCIATES, LLP

1  Further, LIBERTY must follow several standards to protect the public from the consequences of

2  vegetation and/or trees from coming into contact with its power lines and other electrical

3  equipment. Pursuant to Public Resources Code § 4292, LIBERTY is required to "maintain around

4  adjacent to any pole or tower which supports a switch, fuse, transformer, lighting arrester, line

5  junction, or dead end or comer pole, a firebreak which consists of clearing not less than 10 feet in

6  each direction from the outer circumference of such pole or tower." Also, Public Resources Code

7  § 4293 mandates LIBERTY maintain clearances of 4 to 10 feet for all of its power lines,

8  depending upon their voltage. In addition, "[d]ead trees, old decadent or rotten trees, trees

9  weakened by decay or disease and trees or portions thereof that are leaning toward the line which

10  may contact the line from the side or may fall on the line shall be felled, cut, or trimmed so as to

11  remove such hazard."

12      56.     Further, pursuant to CPUC General Order 165, LIBERTY is also required to

13  inspect its distribution facilities to maintain a safe and reliable electric system.  Specifically,

14  LIBERTY must conduct "patrol" inspections of all of its overhead facilities annually in Extreme

15  or High Fire areas, which includes Mono County.[1]  LIBERTY is also required to inspect wood

16  utility poles once the poles have been in service for 15 years, with intrusive inspections of the

17  poles themselves within ten years.[2]

18      57.     LIBERTY knew or should have known that such standards and regulations were

19  minimum standards and that LIBERTY has a duty to identify vegetation and trees which posed a

20  foreseeable hazard to overhead power lines and/or other electrical equipment, and to manage the

21  growth of vegetation near its utility poles and power lines so as to prevent the foreseeable danger

22  of contact between the vegetation and/or trees and power lines starting a fire.

23  / / /

24  _____

25      [1] PUC GO 165, Table  1, http://www.cpuc.ca.gov/gos/GO165/GO_165_table.html

26      [2] A Brief Introduction To Utility Poles, PUC, at p. 10,
27  http://www.cpuc.ca.gov/uploadedFiles/CPUC_Public_Website/Content/About_Us/Organization/Divisions/Policy_and_Planning/PPD_Work/PPDUtilityPole.pdf

28

ROBERTSON
& ASSOCIATES, LLP

**Foreseeable And Expected High Winds and Red Flag Fire Warning**

58.     At all times mentioned herein, Defendants were aware that the State of California had been in a multi-year period of drought. Defendants were also aware that portions of Mono County frequently experience high wind conditions, which are highly conducive to the rapid spread of wildfires and extreme fire behavior. Such winds are not abnormal or unforeseeable, and everyone who lives and works in the Eastern Sierra is familiar with this type of extreme wind event.

59.     On January 17, 2014, the Governor issued an Executive Order proclaiming a State of Emergency throughout the State of California due to severe drought conditions which had existed for four years.  On November 13, 2015, the Governor issued Executive Order B-36-15, which proclaimed "[t]hat conditions of extreme peril to the safety of persons and property continue to exist in California due to water shortage, drought conditions and wildfires...."[3] Although the Governor issued an Executive Order in April 2017 ending the Drought State of Emergency in all counties except Fresno, Kings, Tulare and Tuolumne, the declaration directed state agencies "to continue response activities that may be needed to manage the lingering drought impacts to people and wildlife." [4]

60.     According to records maintained by Cal Fire, electrical equipment was tied as the third leading cause of wildfires in California during 2014, the latest year such statistics have been published.[5] Thus, LIBERTY knew of the foreseeable danger of wildfire when its power lines came into contact with vegetation.

61.     LIBERTY has admitted in its Public Safety Power Shutoff statement that all its service areas – including Mono County – have been designated either "High" or "very High" Fire

---

[3] Exec. Order B-36-15, Office of Gov. Edmund Brown, Jr. (Nov. 13, 2015).

[4] Exec. Order B-040-17 at 3, Office of Gov. Edmund Brown, Jr. (April 7, 2017).

[5] Historical Wildfire Activity Statistics (Redbooks), Cal Fire, available at http://www.fire.ca.gov/fire_protection/fire_protection_fire_info_redbooks_2014

1    Hazard Severity Zones by Cal Fire, "meaning that the possibility of a wildfire is at an elevated risk

2    due to our region's environment and likelihood to burn."

3         62.    LIBERTY was therefore put on notice well in advance of the Mountain View Fire

4    of the elevated fire risk in Mono County for ignition and rapid spread of power line fires due to

5    strong winds, abundant dry vegetation, and/or other environmental conditions.

6         63.    On November 8, 2017, the CPUC published its "Proposed Decision Of

7    Commissioner Picker", which adopted the "Decision Adopting Regulations To Enhance Fire

8    Safety In The High Fire-Threat District".  This Decision adopted new regulations by the CPUC to

9    enhance fire safety of overhead electrical power lines and communications lines located in high

10   fire-threat areas following the devastating Northern California fires.

11        64.    On November 16, 2020, the National Weather Service issued a "Red Flag

12   Warning" for portions of California and high wind warnings for Mono County.

13        65.    The CPUC has authorized LIBERTY and other utilities to temporarily shut down

14   power grids in high fire-threat areas to prevent wildfire.  However, despite knowledge of the risk,

15   LIBERTY failed to shut off circuits, including those in Mono County which resulted in the

16   ignition of the Mountain View Fire.

17        66.    LIBERTY knew of the catastrophic damage which could occur when its electrical

18   equipment sparked a wildfire in a high fire risk area during high wind events yet despite this

19   knowledge, LIBERTY failed to take adequate precautions to prevent its equipment from sparking

20   the Mountain View Fire.

21                        **FIRST CAUSE OF ACTION**

22        **By Plaintiffs For Negligence Against Defendants LIBERTY and DOES 1-20**

23        67.    Plaintiffs incorporate and re-allege each of the paragraphs above as though fully set

24   forth herein.

25        68.    Defendants LIBERTY has a non-delegable, non-transferable duty to apply a level

26   of care commensurate with and proportionate to the danger of designing, constructing, operating

27   and maintaining electrical infrastructure, in addition to performing adequate vegetation clearance

28   around such facilities and to remediate overloaded utility poles.

69.    Defendants have a non-transferable, non-delegable duty of vigilant oversight in the construction, maintenance, use, operation, repair and inspection of their electrical infrastructure that are appropriate to the geographical and weather conditions affecting such equipment.

70.    Defendants have special knowledge and expertise far above that of a layperson regarding their requirements to design, engineer, construct, use, operate, maintain and inspect these electrical facilities, including tree trimming, removal of vegetation and remediating overloaded utility poles such that their electrical equipment will not cause wildfires like the Mountain View Fire.

71.    Defendants have negligently breached those duties by, among other things:

a.    Failing to conduct reasonably prompt, proper and frequent inspections of their overhead electric and communications facilities;

b.    Failing to design, construct, monitor, operate and maintain their overhead electric and communications facilities to withstand foreseeable Santa Ana wind events and avoid igniting and/or spreading wildfires;

c.    Failing to clear vegetation within a 10 foot radius around the perimeter of all utility poles and towers which supports a switch, fuse, transformer, lighting arrester, line junction, or dead end or comer pole as required by Public Resource Code § 4292;

d.    Failure to perform inspections of all overhead electric facilities as required by PUC General Order 165;

e.    Failing to de-energize overhead electric facilities during foreseeable and expected high winds or Red Flag Warnings in fire-prone areas;

f.    Failing to de-energize overhead electric facilities after the initial ignition of the Mountain View Fire;

g.    Failing to properly investigate, screen, train and supervise employees and agents responsible for maintenance and inspection of the overhead electric and communications facilities, including tree trimming and vegetation removal around such facilities.

/ / /

/ / /

72. The Mountain View Fire was the direct, legal and proximate result of Defendants' negligence. As a direct, proximate, and legal result of said negligence, Plaintiffs suffered damages as alleged herein.

73. At all times mentioned herein, Defendants failed to properly inspect and maintain electrical infrastructure and equipment which they knew, given the then existing high wind warnings and Red Flag Warning conditions, posed a risk of harm to the Plaintiffs, and to their real and personal property. Defendants were aware that if their electrical equipment came in contact with vegetation a fire would likely result and spread rapidly. Defendants also knew that, given the then existing weather conditions, said fire was likely to pose a risk of catastrophic property damage, economic loss, personal injury, and/or death to the general public, including Plaintiffs.

74. The property damage and economic losses caused by the Mountain View Fire is the result of the ongoing custom and practice of LIBERTY of consciously disregarding the safety of the public and not following statutes, regulations, standards, and rules regarding the safe operation, use and maintenance of their overhead electric facilities.

75. Defendants failed to properly inspect and maintain their electric facilities in order to cut costs, with the full knowledge that any incident was likely to result in a wildfire that would burn and destroy real and personal property, displace homeowners from their homes and disrupt businesses in the Fire Area.

76. The actions of Defendants did in fact result in damage to the Plaintiffs. Defendants failed to operate their electrical power infrastructure in a safe manner, and/or failed to properly trim and/or remove vegetation around their overhead electric facilities as required by statute, and/or failed to remediate overloaded utility poles which were at risk of failure or collapse in high wind conditions.

77. The negligence of Defendants was a substantial factor in causing the Plaintiffs' damages.

78. Defendants' failure to comply with their duties of care proximately caused damage to Plaintiffs.

/ / /

79.     As a further direct and proximate result of Defendants' negligence, Plaintiffs suffered damages including, but not limited to real property damage, economic loss, loss of quiet use and enjoyment of their property, and costs for debris removal.

80.     Defendants were and are in a special relationship to Plaintiffs. As a supplier of electrical power to the Plaintiffs, LIBERTY's operation of its electrical equipment was intended to and did directly affect the Plaintiffs. LIBERTY is the sole electric public utility which provides electric power to the Plaintiffs in Mono County. As a result, it was foreseeable that a massive wildfire would destroy personal and real property, force residents in the fire area to evacuate, and prevent customers of businesses located within the fire area from patronizing those businesses. The Plaintiffs suffered injuries which were clearly and certainly caused by the Mountain View Fire, resulting in evacuations and relocations, and the cost to repair and replace their damaged and destroyed real and personal property.

81.     Public policy supports finding a duty of care in this circumstance due to Defendants' violation of California Civil Code §§ 3479, 34890, Public Utilities Code § 2106 and Health & Safety Code § 13007.

82.     Further, the conduct alleged herein was despicable and subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, constituting oppression, for which Defendants must be punished by punitive and exemplary damages in an amount according to proof. Defendants' conduct evidences a conscious disregard for the safety of others, including Plaintiffs.  Defendants' conduct was and is despicable conduct and constitutes malice and defined by Civil Code § 3294.  An officer, director, or managing agent of Defendants personally committed, authorized, and/or ratified the despicable conduct alleged herein. Plaintiffs are entitled to an award of punitive damages sufficient to punish and make an example of these Defendants.

## SECOND CAUSE OF ACTION

**By Plaintiffs For Inverse Condemnation Against Defendant LIBERTY and DOES 21-50**

83.     Plaintiffs incorporate and re-allege each of the paragraphs above as though fully set forth herein.

/ / /

84.     On the date of the Mountain View Fire, Plaintiffs were the owners of their respective real property located in Mono County.

85.     Prior to November 17, 2020, Defendant LIBERTY installed, constructed, owned, operated, used, controlled, and/or maintained electrical infrastructure and facilities in Mono County for a public use.

86.     Liberty had a legal duty to perform inspections of all overhead electric facilities as required by CPUC General Order 165. An inherent risk of Liberty not performing vegetation management and/or inspections of its overhead electrical equipment is causing the ignition of a wildfire.

87.     Plaintiffs are informed and believe, and thereon allege that Liberty failed to maintain clearances between its energized conductors and trees and limbs as required by Public Resources Code § 4293, and/or failed to inspect its overhead electrical equipment in accordance with the requirements of CPUC General Order 165 to identify overhead electrical equipment which was in disrepair and/or required replacement. Plaintiffs are informed and believe that LIBERTY'S failure to maintain the required clearances, failure to perform the required inspections and/or failure to design and construct its overhead electrical equipment to ensure that its equipment did not ignite a wildfire was the result of LIBERTY'S policy choice to benefit from the cost savings from declining to pursue a reasonable maintenance and inspection program.

88.     On or about November 17, 2020, as a direct, necessary and legal result of LIBERTY'S installation, construction, ownership, operation, use, control, and/or maintenance for a public use of electric infrastructure, Defendants' overhead electrical equipment ignited the Mountain View Fire.  The fire damaged and/or destroyed Plaintiffs' personal and real property.

89.     The inherent risk of LIBERTY declining to pursue a reasonable maintenance program on its overhead electrical equipment, as required by law, was a substantial cause of the Plaintiffs' damages.

90.     Plaintiffs have not received adequate compensation for the damage to and/or destruction of their property, thus constituting a taking or damaging of Plaintiffs' property by Defendants without just compensation.

1    91.    As a direct and legal result of the above-described damages to Plaintiffs' property,

2    including loss of use and interference with access, enjoyment and marketability of real property,

3    and damage/destruction of personal property, Plaintiffs have been damaged in amounts according

4    to proof at trial.

5    92.    Plaintiffs have incurred and will continue to incur attorney's, appraisal, and

6    engineering fees and costs because of Defendants' conduct, in an amount that cannot yet be

7    ascertained, but which are recoverable in this action pursuant to Code of Civil Procedure § 1036.

8                                **THIRD CAUSE OF ACTION**

9          **By Plaintiffs For Trespass Against Defendants LIBERTY and DOES 1-20**

10    93.    Plaintiffs incorporate and re-allege each of the paragraphs above as though fully set

11    forth herein at length.

12    94.    At all times relevant herein, Plaintiffs was the owner and lawful occupant of real

13    property damaged by the Mountain View Fire.

14    95.    Defendants had a duty to use reasonable care not to enter, intrude on, or invade

15    Plaintiffs' real properties.  Defendants negligently allowed the Mountain View Fire to ignite

16    and/or spread out of control, causing injury to Plaintiffs. The spread of a negligently caused fire to

17    wrongfully occupy land of another constitutes a trespass.

18    96.    Plaintiffs did not grant permission for Defendants to cause the Mountain View Fire

19    to his property.

20    97.    As a direct, proximate and substantial cause of the trespass, Plaintiffs have suffered

21    and will continue to suffer damages, including but not limited to damage to property, discomfort,

22    annoyance, and emotional distress in an amount to be proven at trial.

23    98.    As a further direct and proximate result of the conduct of Defendants, Plaintiffs

24    have hired and retained counsel to recover compensation for loss and damage and are entitled to

25    recover all attorney's fees, expert fees, consultant fees, and litigation costs and expenses, as

26    allowed under California Code of Civil Procedure § 1029.1.

27    / / /

28    / / /

99.     As a further direct and proximate result of the conduct of Defendants, Plaintiffs seek treble or double damages for wrongful injuries to timber, trees, or underwood on his properties, as allowed by Civil Code § 3346.

100.    As a further direct and proximate result of the conduct of Defendants, Plaintiffs seek the reasonable cost of repair or restoration of his property to its original condition and/or loss of use damages, as allowed by Civil Code § 3334.

101.    Defendants' conduct was willful and wanton, and with a conscious disregard for the disastrous consequences that Defendants knew would occur as a result of their dangerous conduct. Accordingly, Defendants acted with malice towards Plaintiffs, which is an appropriate predicate fact for an award of exemplary damages in an amount according to proof.

## FOURTH CAUSE OF ACTION

### By Plaintiffs For Private Nuisance Against Defendants and DOES 1-20

102.    Plaintiffs incorporate and re-allege by this reference each of the paragraphs set forth as though fully set forth herein.

103.    Plaintiffs own and/or occupy real property in the fire area. At all times relevant herein, Plaintiffs have a right to occupy, enjoy, and/or use their property without interference by Defendants.

104.    Defendants' actions, conduct, omissions, negligence, trespass, and failure to act resulted in a fire and foreseeable obstruction to the free use of Plaintiffs' property, invaded the right of Plaintiffs to use their property, and interfered with Plaintiffs' enjoyment of their property, causing Plaintiffs unreasonable harm and substantial actual damages constituting a nuisance pursuant to Civil Code § 3479.

105.    As a direct and proximate result of the conduct of Defendants, Plaintiffs seek the reasonable cost of repair or restoration of his property to its original condition and/or loss-of-use damages, as allowed under Civil Code § 3334.

106.    As a direct, proximate and substantial cause of the trespass, Plaintiffs have suffered and will continue to suffer damages, including but not limited to damage to property, discomfort, annoyance, and emotional distress in an amount to be proven at trial.

107.    Defendants' conduct was willful and wanton, and with a conscious disregard for the safety of others. Accordingly, Defendants acted with malice towards Plaintiffs, which is an appropriate predicate fact for an award of exemplary/punitive damages in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION

**By Plaintiffs For Public Nuisance Against Defendants LIBERTY and DOES 1-20**

108.    Defendants owed a non-transferable, non-delegable duty to the public, including Plaintiffs, to conduct its business, in particular the maintenance and operation of electrical infrastructure and facilities, and adjacent vegetation in proximity to their electrical equipment in Ventura County, in a manner that did not cause harm to the public welfare.

109.    Defendants, by acting and/or failing to act, as alleged herein above, created a condition that was harmful to the health of the public, including Plaintiffs, and created a fire which damaged and interfered with the quite use and enjoyment of his property.  This interference is both substantial and unreasonable.

110.    Plaintiffs did not consent, expressly or impliedly, to the wrongful conduct of Defendants.

111.    The Mountain View Fire which was created by Defendants affected a substantial number of people at the same time within the general public, including Plaintiffs, and constituted a public nuisance under Civil Code §§ 3479 and 3480 and Public Resources Code §§ 4170 and 4171.

112.    The damaging effects of Defendants' creation of a fire hazard and the resulting Mountain View Fire are ongoing and affect the public at large.

113.    As a direct and legal result of the Defendants' conduct, Plaintiffs have suffered harm that is different from the type of harm suffered by the general public. Specifically, Plaintiffs have lost the occupancy, possession, use, and/or enjoyment of his land, real, and/or personal property, including, but not limited to a diminution of value of his real property; an impairment of the ability to sell his property; property exposed to chemical retardant agents dropped from airborne firefighting aircraft; and lingering smell of smoke, soot, ash and dust in the air.

1    114.   As a further direct and legal result of the conduct of Defendants, Plaintiffs have

2  suffered, and will continue to suffer, discomfort, anxiety, fear, worry, annoyance, and/or stress

3  attendant to the interference with the occupancy, possession, use and/or enjoyment of his property.

4    115.   A reasonable, ordinary person would be annoyed or disturbed by the conditions

5  caused by Defendants, and the resulting Mountain View Fire.

6    116.   Defendants' conduct is unreasonable and the seriousness of the harm to the public,

7  including Plaintiffs, outweighs the social utility of Defendants' conduct. There is little to no social

8  utility associated with causing wildfires to destroy the property of the Plaintiffs.

9    117.   The unreasonable conduct of Defendants is a direct and legal cause of the harm,

10  injury, and/or damage to the public, including Plaintiffs.

11    118.   Defendants have failed to conduct reasonable and timely inspections of their

12  electrical infrastructure and facilities, trim and/or remove vegetation in close proximity to such

13  facilities, and/or remediate overloaded utility poles, and Defendants' failure to do so exposed

14  every member of the public to a foreseeable danger of personal injury, death, and/or a loss or

15  destruction of real and personal property.

16    119.   Defendants' conduct set forth above constitutes a public nuisance within the

17  meaning of Civil Code §§ 3479 and 3480, Public Resources Code §§ 4104 and 4170, and Code of

18  Civil Procedure § 731.  Under Civil Code § 3493, Plaintiffs have standing to maintain an action

19  for public nuisance because the nuisance is especially injurious to Plaintiffs, because, as described

20  above, it is injurious and/or offensive to the senses of the Plaintiffs unreasonably interferes with

21  his comfortable enjoyment of his property, and/or unlawfully obstructs the free use, in the

22  customary manner, of his property.

23    120.   For these reasons, Plaintiffs seek a permanent injunction ordering Defendants to

24  stop continued violation of Public Resource Code §§ 4292 and 4293 and PUC General Order 95.

25  Plaintiffs also seek an order directing Defendants to abate the existing and continuing nuisance

26  described above.

27  / / /

28  / / /

## SIXTH CAUSE OF ACTION

### By Plaintiffs For Premises Liability Against Defendants LIBERTY and DOES 1-20

121.    Plaintiffs incorporate and re-allege by this reference, each of the paragraphs set forth as though fully set forth herein.

122.    Defendants were the owners of an easement and/or real property in the area of the origin of the Mountain View Fire, and/or were the owners of electrical infrastructure upon said easement and/or right of way.

123.    Defendants acted wantonly, unlawfully, carelessly, recklessly, and/or negligently in failing to properly inspect, manage, maintain, and/or control the vegetation near their electrical infrastructure along the real property and easement, allowing an unsafe condition presenting a foreseeable risk of fire danger to exist in said area.

124.    As a direct and legal result of the wrongful acts and/or omissions of Defendants, Plaintiffs suffered, and continues to suffer, the injuries and damages as set forth above.

125.    As a further direct and legal result of the wrongful acts and/or omissions of Defendants, Plaintiffs seek the recovery of punitive and exemplary damages against Defendants as set forth above.

## SEVENTH CAUSE OF ACTION

### By Plaintiffs For Violation of Public Utilities Code § 2106

### Against Defendants and DOES 1-20

126.    Plaintiffs incorporate and re-allege each of the paragraphs above as though fully set forth herein.

127.    As a public utility, Defendants are legally required to comply with the rules and orders promulgated by the CPUC pursuant to Public Utilities Code § 702.

128.    Public utilities whose failure to perform or inadequate performance of duties required by the California Constitution, a law of the State, or a regulation or order of the CPUC, leads to loss or injury, are liable for that loss or injury, pursuant to Public Utilities Code § 2106.

/ / /

/ / /

ROBERTSON
& ASSOCIATES, LLP

00031437.1

COMPLAINT

129.    As public utilities, Defendants are required to provide and maintain service, equipment and facilities in a manner adequate to maintain the safety, health, and convenience of their customers and the public, pursuant to Public Utilities Code § 451.

130.    Defendants are required to design, engineer, construct, operate, and maintain electrical infrastructure in a manner consonant with their use, taking into consideration local geographic and weather conditions and other circumstances, so as to provide safe and adequate electric service, pursuant to CPUC General Order 95 and Order 165.

131.    Defendants are required to maintain vegetation in compliance with California Public Resources Code §§ 4293, 4294, 4435 and Health & Safety Code § 13001.

132.    Through their conduct alleged herein, Defendants violated Public Utilities Code §§ 702, 451 and/or CPUC General Order 95, thereby making them liable for losses, damages, and injuries sustained by Plaintiffs pursuant to Public Utilities Code § 2106.

### EIGHT CAUSE OF ACTION

**By Plaintiffs For Violation Of Health & Safety Code § 13007 Against**

**Defendants and DOES 1-20**

133.    Plaintiffs hereby re-allege and incorporate by reference each and every allegation contained above as though fully set forth herein.

134.    By engaging in the acts and/or omissions alleged in this Complaint, Defendants willfully, negligently, and in violation of law, allowed fire to ignite or spread to the property of another in violation of California Health & Safety Code § 13007.

135.    As a legal result of Defendants' violation, Plaintiffs suffered recoverable damages to property under California Health & Safety Code § 13008 and 13009.1.

136.    As a further legal result of the violation of § 13007 by Defendants, Plaintiffs is entitled to reasonable attorney's fees under California Code of Civil Procedure § 1021.9 for the prosecution of this cause of action.

137.    Further, the conduct alleged against the Defendants herein was despicable and subjected Plaintiffs to cruel and unjust hardship in conscious disregard of their rights, constituting oppression, for which Defendants must be punished by punitive and exemplary damages in an

1  amount according to proof.  Defendants' conduct was carried on with a willful and conscious

2  disregard for the rights and safety of the Plaintiffs, constituting malice, for which Defendants must

3  be punished by punitive and exemplary damages according to proof.  An officer, director, or

4  managing agent of LIBERTY personally committed, authorized, and/or ratified the despicable

5  conduct alleged herein.

6                                      **PRAYER FOR RELIEF**

7         WHEREFORE, the Plaintiffs pray for judgment against Defendants as follows:

8         1.    Costs of repair and/or replacement of damaged, destroyed, and/or lost personal

9               and/or real property;

10        2.    Loss of use, benefit, goodwill, and enjoyment of Plaintiffs' real and/or personal

11              property, and/or alternate living expenses;

12        3.    Loss of wages, earning capacity, and/or business profits or proceeds and/or any

13              related business interruption losses;

14        4.    Attorney's fees, expert fees, consultant fees, and litigation costs and expenses, as

15              allowed under California Code of Civil Procedure § 1021.9;

16        5.    Treble or double damages for wrongful injuries to timber, trees, or underwood on

17              their property, as allowed under California Civil Code § 3346;

18        6.    Punitive and exemplary damages;

19        7.    All costs of suit;

20        8.    Prejudgment interest;

21        9.    General damages for fear, worry, annoyance, disturbance, inconvenience, mental

22              anguish, emotional distress, and loss of quiet enjoyment of property; and

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

ROBERTSON
& ASSOCIATES, LLP      00031437.1                          30
                                          COMPLAINT

1     10.    For such other and further relief as the Court shall deem appropriate, all according

2    to proof.

3    Dated: December 23, 2020      **ROBERTSON & ASSOCIATES, LLP**

5    By: _____

6    Alexander Robertson, IV
Mark J. Uyeno

8    FOLEY BEZEK BEHLE & CURTIS, LLP
Peter J. Bezek
Robert A. Curtis

10    LAW OFFICES OF JOSEPH LIEBMAN
Joseph Liebman

12    SPRETER & PETIPRIN, APC
Geoff J. Spreter
Ben Petiprin

14    ***Attorneys for Plaintiffs***

1

## **JURY TRIAL DEMANDED**

2      Plaintiffs hereby demand a trial by jury on all causes of action for which a jury is available

3  under the law.

4   Dated: December 23, 2020                **ROBERTSON & ASSOCIATES, LLP**

5

6                                    By: _____

7                                         Alexander Robertson, IV
                                          Mark J. Uyeno
8
                                          FOLEY BEZEK BEHLE & CURTIS, LLP
9                                         Peter J. Bezek
                                          Robert A. Curtis
10

11                                        LAW OFFICES OF JOSEPH LIEBMAN
                                          Joseph Liebman
12
                                          SPRETER & PETIPRIN, APC
13                                        Geoff J. Spreter
                                          Ben Petiprin
14

15                                        *Attorneys for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28